**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01335-MSK-KLM

TIMOTHY MEEK,

      Plaintiff,

v.

CAPTAIN KOONCE, and
SERGEANT JORDAN,

      Defendants.

---

**OPINION AND ORDER DECLINING TO ADOPT**
**RECOMMENDATION AND GRANTING IN PART AND**
**DENYING IN PART MOTION TO DISMISS**

---

      **THIS MATTER** is before the Court on the Recommendation (**#44**) of the Magistrate

Judge that the Motion to Dismiss (**#30**) filed by the Defendants, Captain Koonce and Sergeant

Jordan, be granted and that all claims be dismissed.  The Plaintiff Timothy Meek, proceeding *pro*

*se*,[1] filed Objections (**#45**) to the Recommendation.

## I.  Background

      The Plaintiff, Mr. Meek, is an inmate under the supervision of the Colorado Department

of Corrections.  In his Second Amended Complaint (**#20**), Mr. Meek generally alleges that on

April 30, 2014, while confined at the Van Cise-Simonet Detention Center in Denver, he was

---

[1] The Court is mindful of Mr. Meek's *pro se* status, and accordingly, reads his pleadings
liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, such liberal construction is
intended merely to overlook technical formatting errors and other such defects in a plaintiff's use
of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).
*Pro se* status does not relive a plaintiff of the duty to comply with various rules and procedures
governing litigants and counsel or the requirements of the substantive law, and in these regards,
the Court will treat the Mr. Meek according to the same standard as counsel licensed to practice
law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San
Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

placed in administrative segregation at the direction of Captain Koonce and Sergeant Jordan.[2] He alleges that although he "was cleared of any wrong doing," he was "still punished with [a]d-seg sanctions."[3]  Mr. Meek alleges that he was not given any notice as to why he was being placed in administrative segregation nor was he given an opportunity to defend himself.  He alleges that the Defendants "conspired to violate [his] due process rights" by placing him in segregation without notice and in violation of the facility's policies.

Mr. Meek complains about the conditions of confinement in segregation, including unsanitary cell confinement for 23 hours per day, deprivation of sunlight, socialization, and mental and physical stimulation, and exposure to bright lights 24 hours per day.  Mr. Meek asserts that he currently suffers from mental health conditions, including bipolar disorder, post-traumatic stress disorder, anxiety, and depression, all of which were exacerbated due to his time in segregation.

Reading his pleadings liberally, the Court understands Mr. Meek to assert the following claims: (1) claims under 42 U.S.C. § 1983 for violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; (2) conspiracy, and (3) violation of Colo. Rev. Stat. § 18-1-411.  Mr. Meek seeks damages, as well as "expunge[ment] of charges" that "affect [his] placement at DOC."

_____

[2] It is not entirely clear from the complaint whether Mr. Meek was a pretrial detainee during the time he was confined at the Detention Center.  The complaint alleges, in passing, that he was a "pre-detanee [sic]."  Mr. Meek's response to the motion to dismiss states more clearly that at the time he was placed in segregation he was a pretrial detainee.

[3] Although not incorporated into his Second Amended Complaint, Mr. Meek alleged in an earlier version of his complaint that on April 24, 2014, he was placed in punitive segregation while being investigated for a rule infraction.  However, upon "being cleared" of the alleged violation, he was not returned to the general population, but instead was placed in administrative segregation.  As indicated by the Second Amended Complaint, Mr. Meek does not take issue with his initial placement in punitive segregation.  He challenges only his detention in administrative segregation after "being cleared."

The Defendants moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6), arguing that Mr. Meek had not alleged facts sufficient to state a claim for relief and that they are entitled to qualified immunity.  The matter was referred to the Magistrate Judge.

The Magistrate Judge issued a Recommendation **(#44)**, in which she recommends that the Motion to Dismiss be granted.  The Recommendation finds that Mr. Meek failed to state a claim for conspiracy or for violation of his rights under the Fifth, Sixth, or Fourteenth Amendments. Specifically, with regard to his procedural due process claim under the Fourteenth Amendment, the Recommendation found that Mr. Meek failed to allege that he was deprived of a liberty interest because he did not allege facts that, if true, would establish that his placement in administrative segregation caused him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life.[4]

Mr. Meek objects to the Recommendation.  His objections are limited.  They relate only to the Magistrate Judge's findings that he has not alleged facts sufficient to state a procedural due process claim under the 14th Amendment.  Specifically, Mr. Meek objects to the Magistrate Judge's conclusion that he had not alleged that he suffered an atypical and significant hardship by being placed in administrative segregation.  Mr. Meek argues that he suffered an atypical and significant hardship due to the known psychological impacts caused by segregation.

## II.  Standard of Review

When a Magistrate Judge issues a Recommendation on a dispositive motion, the parties may file specific, written objections within 14 days after being served with a copy of the Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court shall make a *de novo*

---

[4] In light of her recommendation that the federal claims be dismissed, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over the remaining state law claim and that this claim be dismissed without prejudice.

determination of those portions of the recommendation to which timely and specific objection is made. *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the complaint as true and view those allegations in the light most favorable to the plaintiff. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, any documents attached thereto, and any external documents that are referenced in the complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### III.  Analysis

As noted in Footnote 2, it is not entirely clear from the Second Amended Complaint whether Mr. Meek was a prisoner or a pretrial detainee at the time he was placed in administrative segregation at the Detention Center.  Because the analysis of a procedural due process claim under the 14th Amendment differs based on this fact, and because the Court reads Mr. Meek's pleading liberally, the Court analyzes Mr. Meek's claim under both frameworks.

*1.  Prisoner*

The necessary predicate to a due process claim is a deprivation of a protected liberty or property interest.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  But lawfully incarcerated persons retain only a narrow range of protected liberty interests.  *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994).  Ordinarily, a prisoner does not have a liberty interest independently protected by the Due Process Clause to be placed in the general prison population, rather than in segregation.  *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006).  But a showing that any prison condition imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life may establish the deprivation of a liberty interest.  *See Sandin v. Conner*, 515 U.S. 472 (1995).

The Tenth Circuit Court of Appeals has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest, including whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety and rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, and (3) the placement is indeterminate.  *See Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).  However, the Court is not constrained to apply the four factors that the *DiMarco* court

considered potentially relevant nor is it bound to give more or less weight to any given factor. *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012).  Rather, the correct approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement.  The "ordinary incidents of prison life" will differ depending on a particular inmate's conviction and the nature of nonpunitive confinement routinely imposed on inmates service comparable sentences.  *Id.*  In cases involving placement in nondisciplinary administrative segregation, it is appropriate to compare the conditions at issue with those ordinarily experienced by inmates with similar records and sentences.  Nondisciplinary administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Further, in making this assessment, the Court must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts.  *DiMarco*, 473 F.3d at 1342.

Applying these principles to the facts alleged in the Second Amended Complaint, the Court finds that Mr. Meek has not alleged that he suffered an atypical and significant hardship. Although Mr. Meek alleges that there was no legitimate basis for putting him in administrative segregation, he makes no allegations with regard to the length of time that he was in segregation, whether it increased the duration of his confinement, or the specific conditions of the confinement.  His allegations focus on the effect of the administrative segregation on him.  Mr. Meek complains that the severe and isolating conditions (namely, being placed 23 hour lockdown, with no mental stimulation, and no socialization) exacerbated his mental health conditions, including anxiety, post-traumatic stress disorder, and depression.

It is true that Courts have found that certain conditions of solitary confinement coupled with indefinite segregation and lack of opportunity to be transferred from such segregation can impair a liberty interest.  For example, in *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005), the Supreme Court held that a liberty interest was implicated due to the indefinite placement of inmates in solitary confinement an Ohio supermax prison when there was no eligibility for inmates to seek parole.  The Court noted that inmates at were "deprived of almost any environmental or sensory stimuli and [] almost all human contact" which "[s]ave perhaps for the especially severe limitation on all human contact, these conditions likely would apply to most solitary confinement facilities . . . ."  *Id.* at 224.  Within this circuit, guidance is found in *Rezaq*, where the Tenth Circuit considered the conditions at the federal government's administrative maximum prison facility (ADX).  It explained that the "conditions at ADX, like those at the Ohio supermax prison in *Wilkinson*, do not, in and of themselves, give rise to a liberty interest because they are substantially similar conditions experienced in any solitary confinement setting." *Rezaq*, 677 F.3d at 1015.  The court concluded that the conditions imposed at ADX were not extreme as a matter of law.  *Id.*

Thus, the question at this juncture is whether Mr. Meek has alleged sufficient facts to create a plausible claim that his liberty interest has been impacted.  Unfortunately, the facts are not sufficient in that regard.  The fact that he was in administrative segregation (even if the conditions were as severe as in *Wilkinson* and *Rezaq*) and that he suffered a decline in mental health is insufficient.  As a prisoner, to show that he suffered an atypical and significant hardship giving rise to a protected liberty interest, he must allege other facts such as the length of his segregation and the ability to be transferred from segregation, and suggest that the conditions are extreme relative to that experienced by other similarly situated inmates.  The Court therefore

finds that Mr. Meek, as a prisoner, has failed to state a claim that his procedural due process rights were violated when he was placed in administrative segregation without notice and hearing. The Motion to Dismiss is granted with respect to that claim.

### 2. *Pretrial Detainee*

Due process requires that a pretrial detainee not be punished prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)). However, the government may subject those awaiting trial to the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment. *Id.*

The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose. If an act by a prison official, such as placing the detainee in segregation, is done with intent to punish, the act constitutes pretrial punishment. Similarly, if a restriction or condition is not reasonably related to a legitimate governmental goal — that is, it is arbitrary or purposeless — the Court may infer that the purpose of the action is punishment. On the other hand, restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are uncomfortable. Ensuring security and order at the institution is a permissible non-punitive objective. Thus, no process is required if a pretrial detainee is placed in segregation not as punishment, but for managerial reasons. *Id.*

Taking as true Mr. Meek's allegation that he was a pre-trial detainee at the time (a fact that he will ultimately have the burden of proving), the Court finds that his allegations are sufficient to state a claim for denial of procedural due process. Mr. Meek alleges that he was

placed in administrative segregation without any notice of the reason for his placement.  He

alleges that had been "cleared of any wrong doing," and therefore presumes that he was being

punished.  Because the analysis turns on the government's intent with regard to the placement, of

which Mr. Meek was never made aware, the Court finds it is permissible to infer from Mr.

Meek's allegations that the placement was purposeless.  Accordingly, the Motion to Dismiss is

denied with respect Mr. Meek's claim that, as a pretrial detainee, he was denied procedural due

process by being placed in administrative segregation without notice or a hearing.

## IV. Conclusion

For the forgoing reasons, the Court declines to adopt the Recommendation (**#44**) in its

entirety.  The Motion to Dismiss (**#30**) is **GRANTED, IN PART, AND DENIED, IN PART**.

The Motion is **DENIED only** as to the Plaintiff's 42 U.S.C. § 1983 claim against the individual

Defendants that his procedural due process rights as a pretrial detainee were violated when he

was placed in administrative segregation without notice or a hearing.  The Motion is **GRANTED**

in all other respects and all other claims are dismissed.  Although typically the Court does not

grant a Rule 12(b)(6) motion to dismiss without granting leave to amend, the Court does not do

so in this case.  In light of the several opportunities that Mr. Meek has been given to cure

pleading deficiencies, it does not appear that granting leave to amend would be productive.

Dated this 19th day of August, 2015.

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
Chief United States District Judge